UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-81 |
| | ) | |
| | ) | |
| VICTOR L. LOVEDAY, SR., | ) | |
| Petitioner. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on the motion of defendant's motions for a reduction of sentence, [Docs. 820 and 854]. Defendant requests a reduction in sentence pursuant to Amendments 782 and 788 to the United States Sentencing Guidelines. The United States has responded and acknowledges the defendant is eligible for a reduction in sentence but defers to the Court's discretion whether and to what extent to reduce defendant's sentence, [Doc. 864]. The motions will be GRANTED in part.

**I. Factual and Procedural Background**

The defendant was convicted of participating in a conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). He was held accountable for at least 1,000 but less than 3,000 kilograms of marijuana, resulting in a base offense level of 32. The base offense level was decreased by three levels pursuant to USSG § 3E1.1(a) & (b) (acceptance of responsibility), resulting in a total offense level of 29. The guidelines range was restricted to 240 months due to the mandatory minimum because of a prior drug conviction. The United States filed a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1. The government recommended a

four-level reduction to a range of 151 to 18 months. The Court granted the motion and imposed a

151-month sentence of imprisonment, a 37 percent reduction.

At the time of the entry of his guilty plea, the defendant stipulated to the following facts:

a) Through the testimony of several witnesses, including co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that between January of 2003 and September of 2011, in the Eastern District of Tennessee, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and to possess with the intent to distribute at least 1,000 kilograms but less than 3,000 kilograms of marijuana, a Schedule I controlled substance.

b) During the course of the conspiracy, the defendant distributed marijuana which he obtained from co-defendants Buford Rogers and William McMahan, Jr.

c) Beginning in the early 2000's, co-defendants Rogers and McMahan, Jr. supplied the defendant monthly with bulk quantities of marijuana which the defendant then re-sold. The defendant admits that he obtained and distributed between 1,000 and 3,000 kilograms of marijuana between January of 2003 and May of 2010.

d) On May 13, 2009, a confidential informant attempted to purchase 2 pounds of marijuana from co-defendant Victor Loveday, Jr., the defendant's son. After surveillance was conducted at a meeting between Loveday, Jr. and Buford Rogers in Knoxille, agents followed Rogers to another location where they observed him retrieve a duffle bag from garage. Agents then observed Rogers return to his residence and a car with Georgia plates leave the residence. Loveday, Jr. later told the confidential informant that Rogers had given the marijuana to the defendant, instead.

e) On June 24, 2009, a confidential informant purchased one pound of marijuana from the defendant. During the transaction, the defendant, talked about previous marijuana transactions and said that four or five years ago he was selling 125 to 150 pounds of marijuana a week. The defendant then said that out of the last load they got, he received 230 pounds, and co-defendant McMahan received 270 pounds.

f) On August 9, 2009, a confidential informant purchased one pound of marijuana from the defendant. During the conversation, the defendant said that years ago, he and co-defendant Rogers were

2

getting a thousand pounds of marijuana at a time.

g) On September 2, 2009, a confidential informant had a recorded conversation with the defendant. During the conversation, the defendant said that he had missed "Billy Mac's call." The defendant said that he was going to Atlanta to get a load of marijuana and that Billy Mac said he would take a ton. The defendant quoted a price of $850.00 per pound to the CI. The defendant told the CI that he would try to get 500 pounds. The defendant admits that Billy Mac is co-defendant William McMahan.

h) On September 2, 2009, a confidential informant had a recorded conversation with the defendant. During the conversation, the defendant said that they were going to pick up 200 pounds of marijuana on September 8, 2009.

i) During January, February, March, and April of 2010, in numerous intercepted telephone calls, the defendant spoke with co-defendant McMahan about attempting to secure a source of supply of marijuana from an individual or individuals in Atlanta, Georgia. Between February and April, the defendant and McMahan made four separate trips to Atlanta in order to negotiate the marijuana transactions. On April 12, 2010, during an intercepted telephone call, McMahan suggested that the defendant offer a trade with the marijuana suppliers. McMahan said he would give them the residence at 131 Cross Creek, Maynardville, Tennessee, free and clear for 200 pounds of marijuana, however, no agreement was ever reached regarding the price of the marijuana they were attempting to purchase.

j) On July 27, 2010, the defendant gave a statement to law enforcement agents, after being advised of his rights per Miranda. During his statement, the defendant admitted that he had begun distributing marijuana in 2003 or 2004 that he was obtaining from co-defendant Rogers. The defendant admitted that between 2003 and 2005, he was selling, at times, 100 pounds of marijuana a week. The defendant further admitted that he was paying between $600 and $675 per pound and was reselling the marijuana at $750 per pound. The defendant admitted that in 2008, he and Rogers were attempting to re-com1ect with Rogers' source of supply for marijuana. The defendant said that in March of April of 2009, Rogers obtained a shipment of approximately 500 pounds of marijuana. The defendant said that McMahan received half of that shipment and that the defendant received approximately 220 pounds of marijuana. The defendant admitted that in late 2009, he and McMahan were attempting to obtain a new source of supply for

3

marijuana from an individual in Atlanta, Georgia.

k) The defendant admits that, in total, he is responsible for distributing between 1,000 and 3,000 kilograms of marijuana.

1) The defendant further admits that he made an average of $100 per pound of marijuana that he distributed, or, conservatively, $440,000.

[Doc. 333].

## II. Standard of Review

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 131 S. Ct. 2685, 2690 (2011) (internal citation and quotation marks omitted). Title 18 United States Code § 3582(c)(2), however, gives a district court authority to modify a term of imprisonment that has been imposed on a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission," 18 U.S.C. § 3582(c), through a retroactively applicable amendment such as Amendment 782. *Id.*; USSG § 1B1.10. The Court may reduce the term, "after considering the factors set forth in § 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Section 1B1.10 identifies the guideline amendments that may be applied retroactively, and sets out the factors for deciding a sentence reduction motion under § 3582(c). The Supreme Court has made clear that § 3582 does not require a sentencing or resentencing proceeding, but gives courts the power to reduce an otherwise final sentence under circumstances established by the Sentencing Commission. *Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010); USSG § 1B1.10, cmt. background (noting that

4

a reduction under § 1B1.10 is discretionary and "does not entitle a defendant to a reduced term of imprisonment as a matter of right").

Section 3582(c)(2) establishes a two-step inquiry: First, the court must determine whether the defendant is eligible for a sentence reduction. If he is, the court must then consider whether, in its discretion, the authorized reduction is warranted in whole or in part under the circumstances. *Dillon*, 130 S. Ct. at 2691-92; *United States v. Greenwood*, 521 Fed. App'x 544, 547 (6th Cir. 2013). In exercising its discretion, the court is required to consider public safety factors and is permitted to consider post-sentencing conduct in deciding whether a reduction in the defendant's term of imprisonment is warranted. USSG § 1B1.10, cmt. (n. 1(B)(ii)-(iii)). Thus, the district court is required to consider both the § 3553(a) factors and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in defendant's term of imprisonment." *Curry*, 606 F.3d at 330 (quoting USSG § 1B1.10, cmt. n. 1(B)(ii)).

One other factor is relevant to the instant motion. Ordinarily, a defendant's sentence may not be reduced to a term "less than the minimum of the amended guideline range." USSG § 1B1.10(b)(2)(A). But where, as here, defendant previously received a below-guideline sentence "pursuant to a government motion to reflect the defendant's substantial assistance to authorities," the Court has authority to grant a reduction "comparably less than the amended guideline range." USSG § 1B1.10(b)(2)(B). In addition, where, as is the case here, the defendant obtained a downward departure pursuant to 18 U.S.C. § 3553(e), "the amended guideline range shall be determined without regard to the operation of § 5G1.1 . . . and § 5G1.2." USSG § 1B1.10(c).

The relevant factors here demonstrate that a reduction is appropriate but that the reduction should be less than that requested by defendant. First is the seriousness of defendant's criminal conduct. The defendant was a substantial participant in a very serious conspiracy to distribute a

5

very large quantity of marijuana. The defendant personally ordered large quantities of marijuana and distributed pound quantities on numerous occasions. He participated in the conspiracy dealing in large quantities for a lengthy period of time. In addition, the defendant's criminal history is also an important consideration. The defendant had a prior drug conviction which is a significant factor.

Protection of the public and necessary general deterrence are also significant factors which weigh against the requested reduction here, given the seriousness of the criminal conduct and the large amount of marijuana involved in the offense. One final factor also weighs against the full reduction sought by defendant. The defendant faced a congressionally imposed 240-month mandatory minimum term of imprisonment as a result of his conviction. The only reason he escaped that 240-month minimum term, then or now, was the government's motion for downward departure based on substantial assistance. At the time of sentencing, the clear rule in the Sixth Circuit was that "only factors relating to a defendant's cooperation may influence the extent of a departure pursuant to § 3553(e)." *United States v. Grant*, 636 F.3d 803, 814 (6th Cir. 2011) (*en banc*). This Court reviewed the government's motion outlining the assistance provided by the defendant and concluded at the time that the sentence imposed reflected the extent of his cooperation. The policy bases upon which the Sixth Circuit premised its holding remain the same, even though the defendant is now ***eligible*** for the reduction based on the amendment to the guidelines. Since the only way defendant escaped the congressionally imposed mandatory minimum was for substantial assistance to the government, it is perfectly logical that the extent of the reduction should be determined based on the extent of assistance.

As the government points out, a reduction to the level sought by the defendant would result in an 80 percent reduction from the mandatory minimum. Such a reduction is not

warranted here under the circumstances outlined above.  The Court will, however, in the exercise of its discretion, in light of the defendant's lack of disciplinary history during his incarceration and his post-sentencing efforts at rehabilitation, including a drug program, grant some additional reduction in the case.  Therefore, the defendant's motions are GRANTED, and his sentence will be reduced to a term of 114 months of imprisonment.

This order is effective November 2, 2015.

ENTER:

                                                    s/J. RONNIE GREER
                                            UNITED STATES DISTRICT JUDGE